UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 13-CV-10011-KING

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.

BARRY J. GRAHAM, FRED DAVIS
CLARK, JR., a/k/a DAVE CLARK, CRISTAL
R. COLEMAN, a/k/a CRISTAL CLARK,
DAVID W. SCHWARZ, and RICKY LYNN
STOKES,

    Defendants.
_____/

**DEFENDANTS, FRED DAVIS CLARK, JR., CRISTAL CLARK, AND DAVID W. SCHWARZ'S, REPLY IN OPPOSITION TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S NOTICE OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT AND DECLARATIONS OF SCOTT CALLAHAN AND CHUCK PHOENIX**

Defendants, FRED DAVIS CLARK, JR. ("Mr. Clark"), CRISTAL CLARK ("Mrs. Clark"), and DAVID W. SCHWARZ ("Mr. Schwarz") (collectively the "Defendants"), by counsel and pursuant to Local Rule 7.1(c), hereby file this Reply in support of their above-referenced Motion to Strike the Declarations of Scott Callahan and Chuck Phoenix **[Doc. 180]**, and in opposition to Plaintiff, SECURITIES AND EXCHANGE COMMISSION's ("SEC"), Response to that Motion (the "Response") **[Doc. 183]**, and state as follows:

**I. THE SEC CONTINUES ITS BASELESS EFFORTS TO KEEP THIS COURT FROM CONSIDERING CLEARLY ADMISSIBLE EVIDENCE IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.**

The SEC's Response continues to incorrectly argue that Mr. Clark's Affidavit filed in support of his and Mrs. Clark's Motion for Summary Judgment is inadmissible. The SEC's latest argument is that the Affidavit is inadmissible under Federal Rule of Evidence 902(3). [Doc. 183, pp. 2-3, n. 2] In this regard, the SEC incorrectly asserts that Mr. Clark's Affidavit

1

does not contain the type of certification described in Rule 902(3) "and is therefore inadmissible hearsay." [Doc. 183, p. 3, n. 2] Rule 902(3) is not a hearsay exception and does not even relate to hearsay. Instead, Rule 902(3) lists a category of documents that may be self-authenticated. There is no dispute that Mr. Clark's Affidavit is authentic.[1] Even if there were such a dispute, Mr. Clark authenticated the Affidavit when he filed his Declaration reaffirming and reasserting his sworn testimony herein and, therefore, self-authentication under Rule 902 is unnecessary. [Doc. 141-1, p. 2, ¶s 3-5]

Furthermore, Rule 902(3) governs self-authentication of "foreign public documents." Mr. Clark's Affidavit is not a foreign or public document, which further establishes Rule 902(3)'s inapplicability. Assuming *arguendo* Mr. Clark's Affidavit could be construed as a "foreign public document," it is self-authenticating under Federal Rule of Evidence 902(8) because it certifies that Mr. Clark swore to the testimony therein before a licensed notary public. *E.g., Baker Hughes, Inc. v. Homa*, 2012 WL 1551727 p. 18, n. 3 (quoting 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 7137 (2000).) ("[A] foreign document that has been acknowledged or notarized may be self-authenticating under Rule 902(8).").

Finally, in order to allay the SEC's purported concerns, Mr. Clark reaffirmed and reasserted all of the sworn testimony in his Affidavit in a Declaration that contains a handwritten, verbatim certification required by 28 U.S.C. § 1746 for Declarations outside of the United States.[2] [Doc. 141-1] In that same Declaration, Mr. Clark also reaffirmed and reasserted the testimony set forth in his Declarations filed at Docket Entries 88-4, 121-1, and 129-1. [Doc. 141-1] Mrs. Clark also executed and filed a Declaration containing a handwritten, verbatim certification required by 28 U.S.C. § 1746 for declarations made outside of the United States,

---

[1] Mr. Clark's Affidavit was filed three weeks before his December 6, 2013, deposition. As such, the SEC had every opportunity to ask Mr. Clark about the Affidavit's authenticity, as well as the substance of his testimony therein. The SEC did neither.

[2] The SEC has previously argued that Mr. Clark's Affidavit is inadmissible because it did not certify that the testimony therein was provided under penalty of perjury as set forth in 28 U.S.C. § 1746. Contrary to the SEC's incorrect argument, § 1746 governs unsworn declarations offered in lieu of affidavits, not sworn affidavits themselves. Since a declaration is not sworn to before a notary, the declarant must certify in writing he or she is testifying under penalty of perjury. No such certification is required for an affidavit, which, by definition, contains sworn testimony given under penalty of perjury, as confirmed by the notary public's certification.

which reaffirms and reasserts the testimony she gave in the Declarations filed at Docket Entries 121-4 and 129-1. The SEC's continued proffering of clearly-incorrect, hyper-technical arguments regarding the admissibility of the Clarks' Affidavit and Declarations is an act of desperation indicative of the SEC's win-at-all-costs approach to litigation.

The SEC's final evidentiary argument is that Mr. Clark cannot authenticate the demand letter found at Docket Entry 88-4, p. 53, "because he did not author the purported letter" even though it was sent to, and received by, Mr. Clark. [Resp., p. 3] Not surprisingly, the SEC cites no authority in support of that incorrect assertion. Federal Rule of Civil Procedure 901(b)(1) authorizes items to be authenticated merely by the testimony of a witness with knowledge that the "item is what it is claimed to be." As the person to whom the demand letter was directed and sent, and the person who received it, Mr. Clark is a person with knowledge authorized to authenticate the demand letter pursuant to Rule 901(b)(1). *See U.S. v. Durham*, 868 F.2d 1010 (8th Cir. 1989)(holding that a copy of a letter was properly authenticated under Rule 901(b)(1) by two persons who had previously read the letter); *Stone v. Koch Farms of Gadsden, LLC.,* 2014 WL 636983, No. CV 1:12-37777-RBP at *3 (N.D. Ala. 2014)(explaining the 11th Circuit's *prima facie* standard for authentication and ruling that the recipient of a letter could authenticate it under Rule 901(b)(1)). The SEC's assertion that only a letter's author can authenticate it is simply wrong.

**II.    NOTHING IN THE DECLARATIONS OF CHARLES PHOENIX OR SCOTT CALLAHAN ALTERS THE INDISPUTABLE FACT THAT MR. SCHWARZ RESIGNED FROM CAY CLUBS IN OCTOBER 2007, AND, THEREFORE, THE STATUTE OF LIMITATIONS HAS EXPIRED ON THE SEC'S CLAIMS AGAINST MR. SCHWARZ.**

As explained in Mr. Schwarz's Motion for Summary Judgment, the SEC's claims herein are governed by the five-year statute of limitations set forth in 28 U.S.C. § 2462 ("§ 2462"). [Doc. 62] It is undisputed that although the SEC began investigating Cay Clubs and the Defendants in 2007, the SEC waited until January 30, 2013, to file this lawsuit. Mr. Schwarz has given the following uncontradicted testimony confirming that he resigned all of his positions with Cay Clubs no later than October 2007 and had no further involvement in Cay Clubs after that time:

> 4.     In or about October 2007, I resigned all of my positions with the limited liability companies that comprised Cay Clubs and also assigned and transferred all of my membership interests in those companies to the F. Dave

3

> Clark Irrevocable Trust.
>
> 5. From the time of my resignation from Cay Clubs in or about October 2007, I have not operated, or participated in the operation of, the business of Cay Clubs or any of the limited liability companies that comprised Cay Clubs.

[Doc. 62-1, p. 2]  Nothing in the Declarations of Charles Phoenix or Scott Callahan (the "Phoenix and Callahan Declarations") addresses, alters, or contradicts this testimony.  Likewise, the SEC has not filed any other evidence contradicting Mr. Schwarz's testimony, and no such evidence exists.  Thus, Mr. Schwarz is entitled to summary judgment based on the expiration of § 2462's five-year statute of limitations.

**III. NOTHING IN THE PHOENIX AND CALLAHAN DECLARATIONS ALTERS THE FACT THAT MRS. CLARK HAD NO INVOLVEMENT IN THE OFFER OR SALE OF CAY CLUBS' CONDOMINIUMS AFTER CAY CLUBS CEASED NORMAL OPERATIONS AND BEGAN WINDING UP IN OCTOBER 2007, AND, THEREFORE, THE STATUTE OF LIMITATIONS HAS EXPIRED ON THE SEC'S CLAIMS AGAINST MRS. CLARK.**

In an effort to establish that Mrs. Clark engaged in some actionable conduct within the five-year "red zone" for § 2462's statute of limitations, the SEC has pointed solely to Mrs. Clark's management of Cristal Clear Rentals, LLC, which the SEC asserts continued into 2008.[3]  Upon repeated questioning from the SEC's counsel, however, Mrs. Clark testified in deposition that Cristal Clear Rentals, LLC, was in the business of managing vacation homes that were not in, and did not have any relationship to, Cay Clubs' resort projects:

> Q.: Cristal Clear Rentals, was it in the business of managing Cay Clubs properties?
> A.: No, it didn't manage any Cay Clubs properties that I'm aware of.
> Q.: What was Cristal Clear Rentals in the business of doing?
> A.: Vacation rentals of properties all over the Florida Keys and in Wilton Manors, Florida.
> Q. So vacation rentals that were located in Cay Clubs properties, correct?

---

[3] The SEC is forced to misplace reliance on Mrs. Clark's management of Cristal Clear Rentals, LLC, in a futile effort to establish that she engaged in such actionable conduct because the uncontradicted evidence proves that Mrs. Clark did not manage or control any Cay Clubs entity that was involved in the offer or sale of Cay Clubs condominiums.  [Docs. 121-4 and 141-2]

  A.  No, not that I'm aware of, no.[4]

[Doc. 92-14, p. 98, ln. 24 - p. 99, ln. 9]  This testimony confirms that Cristal Clear Rentals, LLC, was not involved in the marketing, offer, sale, or management of Cay Clubs condominiums. Instead, Cristal Clear Rentals, LLC, was in the business of managing (not offering or selling) vacation homes that were unrelated to, and unaffiliated with, Cay Clubs.

  Based on the foregoing, Mrs. Clark's management of Cristal Clear Rentals, LLC, is irrelevant to her statute-of-limitations defense to the SEC's claims pursuant to § 2462.  The SEC has proffered no other evidence that suggests, much less establishes, that Mrs. Clark participated in the offer or sale of Cay Clubs condominiums after the company ceased normal operations and began winding up in October 2007.  Mrs. Clark is, therefore, entitled to summary judgment on the SEC's claims pursuant to § 2462.

**IV. THE SEC'S UNTIMELY FILING OF THE DECLARATIONS OF MESSRS. PHOENIX AND CALLAHAN AFTER THE CLOSE OF DISCOVERY, AND A MERE TWO DAYS BEFORE THE MARCH 20, 2014, ORAL ARGUMENT ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, IS HIGHLY PREJUDICIAL TO DEFENDANTS.**

  The SEC's Response incorrectly asserts that good cause exists for the SEC's untimely filing of the Phoenix and Callahan Declarations because they did not come into existence until shortly before the March 20, 2014, oral argument on Defendants' Motions for Summary Judgment.  [Doc. 183, p. 4]  The SEC, however, began investigating Cay Clubs in 2007 and continued its pre-suit investigation until January 2013 when the SEC filed this action.  During that entire five-plus year period, the SEC had the opportunity to subpoena Messrs. Phoenix and Callahan to provide sworn testimony.  Moreover, the SEC had every opportunity to subpoena Messrs. Phoenix and Callahan for deposition during the discovery period herein.  The SEC did neither and instead dropped the Phoenix and Callahan Declarations (which the SEC clearly helped craft) on Defendants after the close of discovery and a mere two days before the oral argument.

---

[4] The SEC neglected to bring this deposition testimony to the Court's attention when making its argument regarding Mrs. Clark's management of Cristal Clear Rentals, LLC, and its purported impact on Mrs. Clark's statute-of-limitations defense at the March 20, 2014, oral argument on Defendants' Motions for Summary Judgment.

In so doing, the SEC denied Defendants any opportunity to perform discovery on the allegations set forth in the Phoenix and Callahan Declarations. That denial is tremendously prejudicial to Defendants because the Phoenix and Callahan Declarations are: a) a carefully crafted collection of bare allegations, opinions, and conclusions designed to provide maximum smear without referencing a single, verifiable fact, document, or other piece of admissible evidence; b) given by Messrs. Phoenix and Callahan under extreme duress in the form of threatened criminal prosecution by the Department of Justice; and c) will not stand up to cross examination and the application of documentary and other verifiable evidence. This is classic prejudice that should prohibit the Court's consideration of the Phoenix and Callahan Declarations.

V.  **MR. CLARK DID NOT SPOLIATE ANY EVIDENCE, AND THE SEC'S INABILITY TO SECURE THE CAY CLUBS RECORDS THAT MR. CLARK KEPT IN STORAGE FOR TWO – THREE YEARS AFTER CAY CLUBS CEASED OPERATIONS, AND UNTIL HE COULD NO LONGER AFFORD TO PAY THE STORAGE FEES, RESULTED FROM THE SEC'S OWN DILATORY CONDUCT IN INVESTIGATING CAY CLUBS, NOT ANY MISCONDUCT OF MR. CLARK.**

The Response next reasserts the SEC's incorrect argument that Mr. Clark somehow intentionally spoliated evidence when certain of Cay Clubs' records, the identity and nature of which are unknown, were apparently lost after he could no longer afford to pay the storage fees of the facility in which they were housed. The records were held in storage from late 2007 through 2009 or 2010. [Doc. 85-2 and 85-3]  During that period, Mr. Clark personally paid the storage fees. [Doc. 85-2 and 85-3]  Eventually, Mr. Clark was unable to continue paying the storage fees as a result of financial distress, and the records were apparently lost when the storage facility foreclosed on the unit. [Doc. 85-2 and 85-3]

The evidence establishing these facts is wholly uncontradicted. It establishes as a matter of law that Mr. Clark did not engage in the type of intentional or voluntary misconduct required for a finding of actionable evidence spoliation. *See, e.g., Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)(holding that the party seeking such an adverse-inference instruction based on evidence spoliation must prove that "the absence of [the subject] evidence is predicated on bad faith"); *Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1293-94 (11th Cir. 2003)(declining to draw adverse inference in case alleging improper disclosure of trade secret

6

because plaintiff failed to prove bad faith in losing label); *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (holding district court did not err in declining to draw an adverse inference where the plaintiffs failed to present any evidence regarding bad faith); *Point Blank Solutions, Inc. v. Toyobo America, Inc.*, 2011 WL 1456029, *10 (S.D. Fla. 2011)(explaining that even grossly negligent discovery conduct does not justify an adverse-inference jury instruction based on spoliation).

Throughout the entire two – three year period that Mr. Clark was paying the storage fees, the SEC was investigating Cay Clubs and Defendants. Despite that fact, the SEC did not issue a subpoena to Mr. Clark for Cay Clubs' records until July 15, 2010 -- nearly three years after the SEC started its investigation and after Mr. Clark was no longer able to pay the storage-unit fees. [Doc. 85-1, Exhibit B] The SEC has no justification for this three-year delay in subpoenaing Cay Clubs records; the SEC was simply dilatory through no fault of anyone but the SEC. That is why the records were lost, not due to the conduct of Mr. Clark or anyone else.

Instead of issuing a timely subpoena, on October 4, 2007, the SEC sent an informal request for documents to Mr. Clark, in his capacity as Chief Executive Officer, Cay Clubs International, LLC. [Doc. 119-1] The SEC's Response asserts that the unavoidable loss of the subject records two - three years after the SEC sent the request somehow establishes that Mr. Clark spoliated evidence. That argument is destroyed by the explicit instructions set forth in the informal request and the SEC Form 1662 enclosed therein.

The informal request itself specifically instructs Cay Clubs and Mr. Clark that they should not construe the request as an indication that the SEC believes they committed any wrong doing and directs them to Form 1662 for instructions on responding to the request:

> This inquiry is confidential and **should not be construed as an indication by the Commission or its staff that any violation of law has occurred, or as a reflection upon any person, entity**, or security. Information is provided is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copy of **SEC Form 1662, which also contains other important information.**

[Doc. 119-1, p. 2; emphasis supplied] One piece of "important information" contained in the SEC Form 1662 is an explanation that there are no consequences for Cay Clubs' failure to

7

produce documents pursuant to the SEC's informal request:

> Effect of Not Supplying Information
>
> * * *
>
> *Persons Requested to Supply Information Voluntarily.* **There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.**

[Doc. 119-1, p. 5; bold emphasis supplied] Neither the informal request for documents nor the SEC Form 1662 contains any request for Cay Clubs or Mr. Clark to preserve its records for future use or inspection.

In sum, the SEC's informal request explicitly instructed Cay Clubs and Mr. Clark that there were no consequences for failing to respond thereto, and also did not request that Cay Clubs preserve its records. Now, in complete contradiction, the SEC contends that Mr. Clark somehow spoliated evidence when he preserved the documents for two - three years after the SEC served its informal request and only ceased doing so when he was no longer able to continue paying the fees necessary to maintain the storage unit. The absence of merit in the SEC's argument is self-evident.

VII. **MESSRS. PHOENIX'S AND CALLAHAN'S MERE PARROTING OF THE SEC'S INCORRECT ASSERTION THAT CAY CLUBS CONTINUED TO OFFER AND SELL CONDOMINIUMS UNTIL JULY 2008 ARE CONCLUSORY STATEMENTS THAT HAVE NO BEARING ON THE STATUTE-OF-LIMITATIONS ANALYSIS.**

The SEC incorrectly asserts that Messrs. Phoenix's and Callahan's conclusory (and incorrect) statements that Cay Clubs continued selling condominiums until July 2008 are relevant to the statute-of-limitations analysis. Those statements simply parrot the SEC's incorrect position, which is contrary to the testimonial and documentary evidence establishing that Cay Clubs ceased operations, other than wind-up activities, in October 2007 after Coast Investments Group, LLC, exercised its default rights on its $25 million bridge loan to Cay Clubs. The conclusory nature of Messrs. Phoenix's and Callahan's statements renders them meaningless.

At the latest, § 2462's statute of limitations began running on the SEC's claims upon the buyers' execution of an agreement to purchase Cay Clubs condominiums, not upon the closing of the sales pursuant to such agreements. *See Trilogy Properties, LLC v. SB Hotel Associates, LLC,* 09-21406-CIV, 2010 WL 7411912 (S.D. Fla. 2010). Neither Mr. Phoenix, Mr. Callahan, nor the

SEC has cited to, or provided any evidence of, a Cay Clubs purchase agreement that was executed in the five-year period preceding the SEC's filing of its Complaint herein on January 30, 2013.[5] Thus, the conclusory and unsupported statements of Messrs. Phoenix and Callahan that Cay Clubs continued selling condominiums into 2008 have no bearing on the statute-of-limitations analysis.

## Conclusion

Based on the foregoing, Defendants respectfully request the Court to grant their Motion to Strike Plaintiff's Notice of Supplemental Evidence in Support of Summary Judgment and Declarations of Scott Callahan and Chuck Phoenix. For the reasons explained above, the Declarations should not affect the outcome of the Defendants' Motions for Summary Judgment based on the expiration on the statute of limitations set forth in § 2462 should the Court choose to accept them.

Dated April 14, 2014

Respectfully submitted,

/s/ Kenneth P. Hazouri

Kenneth P. Hazouri (Fla. Bar No. 019800)
kph47@dbksmn.com
de Beaubien, Knight, Simmons,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Defendants F. DAVIS CLARK, JR., CRISTAL CLARK, and DAVID W. SCHWARZ

LEON H. HANDLEY
Florida Bar No. 0033418
lhandley@rumberger.com
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)

---

[5] Even if the SEC had filed evidence of such a purchase agreement, which it has not, the SEC's claims against the Defendants would be limited to those arising out of that particular agreement, not any other purchase agreements that were executed outside of the five-year "red zone" for § 2462's statute of limitations.

>Post Office Box 1873
>Orlando, Florida  32802-1873
>Telephone:  (407) 872-7300
>Telecopier:  (407) 841-2133
>Attorneys for Defendants F. DAVIS CLARK, JR.,
>and CRISTAL CLARK

## Certificate of Service

I hereby certify that on April 14, 2014, I electronically filed this Reply with the Clerk of the Court using the CM/ECF system, which will serve copies on all parties of record.

>  /s/ Kenneth P. Hazouri
>Kenneth P. Hazouri